**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:10cv102**

| | | |
|---|---|---|
| **SCOTT WESLEY GOFORTH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary

Judgment [Doc. 7] and the Defendant's Motion for Summary Judgment.

[Doc. 9].

**I.    PROCEDURAL HISTORY**

Plaintiff Scott Wesley Goforth filed an application for a period of

disability and disability insurance benefits on November 16, 2007, alleging

that he had become disabled as of May 15, 2006. [Transcript ("T.") 146].  The

Plaintiff's application was denied initially and on reconsideration. [T. 81-83].

Original and supplemental hearings were held before Administrative Law

Judge ("ALJ") John L. McFayden on April 24, 2009 and July 16, 2009. [T. 48-

71, 28-46].  On August 27, 2009, the ALJ issued a decision denying the

Plaintiff benefits. [T. 10-25]. The Appeals Council accepted additional evidence, but denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 2-6]. The Plaintiff has exhausted his available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets

or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. FACTUAL BACKGROUND

Plaintiff was 42 years old at the time of his hearing before the ALJ. He alleges that he became disabled on March 15, 2006, the date he was laid off from his job as an asphalt screed operator. [T. 42-43]. Plaintiff made two unsuccessful work attempts after his alleged onset date but has not engaged in substantial gainful activity since that time. [T. 53].

On February 20, 2003, Wesley C. Fowler, III, M.D. performed a C5-6 and C6-7 anterior cervical discectomy, bilateral C6 and C7 foraminotomies, arthrodesis at C5-6 and C6-7 with bone graft, and a microscopic dissection on Plaintiff. Plaintiff was hospitalized three days longer than expected due to

4

continued neck and arm pain. [T. 207]. He was permitted to remove his cervical collar two weeks after his release from the hospital. [T. 202-06, 207-17].

On July 25, 2006, the Plaintiff underwent a C4-5 anterior cervical discectomy and a repeat anterior cervical discectomy at C5-6 with a right autologous iliac crest graft. He complained afterward of pain at the graft site. [T. 218-226]. An x-ray taken on November 30, 2006 showed no evidence of hardware loosening or failure, no instability above or below the fusion, and mild kyphosis at C3-4 that matched prior studies. It was noted that fusion was not yet complete. [T. 262, 265]. It was also noted that Plaintiff was still wearing his cervical collar, and he was encouraged to discontinue use of it. [T. 264]. On June 4, 2007, Dr. Fowler noted that Plaintiff was "out of his cervical collar" and had progressed to full fusion. Dr. Fowler found that Plaintiff had no neurological deficits, and had somewhat improved posterior cervical pain. He concluded that Plaintiff was not a candidate for further neck surgery. [T. 263].

On August 11, 2006, the Plaintiff was admitted to the psychiatric unit of Mission Hospital. He was diagnosed with depression but bipolar disorder was ruled out. [T. 227-61]. During his stay, Plaintiff tested positive for hepatitis C.

[T. 227]. It was noted that Plaintiff was significantly stressed by his poor physical health and financial problems from being unable to work. [T. 241]. A Global Assessment of Functioning (GAF) of 40 was noted. [T. 236].

Plaintiff received treatment from Nicole Ogg, M.D. at the Mashburn Medical Center of Hot Springs Health Program from August 2002 through July 24, 2009. Earliest records show that Plaintiff was evaluated and treated for neck pain. [T. 311-12]. Periodically over the years, he sought treatment for neck, hip, back, and left arm pain. [T. 311-12, 308, 303]. It was noted that he regularly wore a cervical collar to aid with pain. He also had persistent complaints of stress due to financial issues, marital problems, and his wife's multiple sclerosis. [T. 296-316, 336-62, 434-44, 522-30, 587-601, 651-63].

The Plaintiff received mental health treatment from Alpha Omega Health from November 2007 through May 2009. [T. 363-390, 428-433, 538-568, 642-650]. He presented with problems including separation from his wife and son, a ten-year history of depression, multiple grief issues, and inability to work. [T. 369]. On March 20, 2008, he told his therapist that he felt well enough to work at least part-time, she agreed that he was emotionally capable. They discussed jobs that would not hurt his neck. [T. 430]. On April 24, 2008, he was deemed well enough to start hepatitis treatments and to

endure the fatigue and increased depression that it would cause.  [T. 428].

He reported that his headaches were diminished  [T. 526], that his neck pain

was controlled with Oxycodone, and his depression symptoms remained

stable.  [T. 524].

Plaintiff began treatment for hepatitis C in May 2008 with Asheville

Gastroenterology.  [T. 446-68, 503-21, 568-85].  He experienced various side

effects, including fatigue, nausea, diarrhea, muscle pain, and joint pain, as a

result of the medication.  [T. 511, 509, 505].  By March 2009, he was stable

with negative lab results.  [T. 568].

On March 25, 2008, Pamela Jessup, M.D. performed a Physical

Residual Functional Capacity Assessment (RFC) for Disability Determination

Services (DDS).   Dr. Jessup concluded that Plaintiff was limited to medium

work, with a limitation in reaching overhead with his left arm.  [T. 420-27].

On March 20, 2008, Amy Rehfeld, D.O. performed an internal medicine

examination for DDS.   Dr. Rehfeld concluded that Plaintiff was impaired by

chronic back pain, hepatitis C, and bipolar disorder.  She opined that he was

limited in his ability to bend, stoop, lift, and push and pull heavy objects. [T.

397-401].

Another Physical RFC was performed by Alan B. Cohen, M.D. on July 8, 2008.  Dr. Cohen found Plaintiff capable of light work with a limitation in frequent reaching.  [T. 469-76].

On January 5, 2009, Plaintiff was admitted involuntarily to Mission Hospital due to homicidal intentions expressed against his ex-wife's boyfriend, whom Plaintiff believed to be a "dope dealer."  [T. 532-39].  He was transferred to Broughton Hospital for assessment.  There it was noted that he was much calmer, and his prior emotional state was determined to have been situational.  [T. 623-29].

Plaintiff was evaluated by Jennifer Zeisz, Ph.D. on February 25, 2008. [T. 391-96].  Plaintiff reported a thirteen-year history of depression.  He reported having "rages" ever since he was a small child.  He reported frequent insomnia and fatigue. [T. 392].  Dr. Zeisz concluded that Plaintiff's judgment and impulse control were significantly impaired at times by mental health symptoms, and that his attention, persistence, and ability to get along with others and to respond to supervision were impaired.  She diagnosed him with bipolar disorder but without rapid cycling, severe depression, and generalized anxiety disorder with panic due to a general medical condition. She noted a GAF score was 49.  She concluded that "[a]t this time it does not

appear that Mr. Goforth has the psychological resources to gain or maintain employment (not withstanding the physical impairments)." [T. 395].

A Psychiatric Review Technique (PRT) was performed on February 29, 2008 for DDS by Eleanor E. Cruise, Ph.D. [T. 402-15]. Dr. Cruise rejected Dr. Zeisz's findings about Plaintiff's impaired judgment, finding that they were inconsistent with the testing that Dr. Zeisz performed, and because Plaintiff was showing significant improvement from ongoing mental health treatment. Dr. Cruise also completed a Mental Residual Functional Capacity (RFC) assessment in which she opined that Plaintiff had no more than moderate limitations, and could perform simple tasks for at least two hours at a time, could relate appropriately to others, and had a somewhat limited stress tolerance. [T. 416-19].

Another Mental RFC was performed by W.W. Albertson, Ed.D. on July 14, 2008. Like Dr. Cruise, he concluded that Dr. Zeisz's findings were not justified by her own record. Dr. Albertson found the Plaintiff should be limited to simple routine repetitive tasks in a low stress, low social demand environment. [T. 477-79].

On April 6, 2009, Meg Kelly, LCSW and Elise Averdick, FNP completed another PRT on the Plaintiff. [T. 602-13]. They found that Plaintiff had

marked limitations in social functioning and concentration, persistence or pace. They followed this with a Medical Source Opinion (Mental) where they noted two severe limitations, eight moderately severe limitations, and eight moderate limitations. [T. 614-16].

On April 7, 2009, Dr. Ogg completed a Medical Assessment of Ability to do Work-Related Activities (Physical). In that report, Dr. Ogg stated that Plaintiff could lift and carry less than ten pounds, stand and walk in combination for a total of four hours, sit for a total of four hours, and consistently perform in a competitive work-like environment for one and half hours if allowed to alternate between sitting and standing; however, he could not perform those activities for thirty to forty hours a week. Dr. Ogg also reported that while Plaintiff could never climb, he could frequently bend, and occasionally stoop, kneel, balance, crouch, and crawl. Dr. Ogg further opined that Plaintiff's impairments limited his ability to reach, handle, push/pull, and be around heights and moving machinery. [T. 620-22].

At the ALJ hearing, Plaintiff testified that he is disabled by bipolar disorder, post-traumatic stress disorder, chronic pain in his neck from two previous surgeries, pain in his neck and shoulder, migraines, hip pain from grafting, and limitations on lifting due to pressure on his neck and shoulder.

[T. 54, 60]. With respect to his neck pain, Plaintiff stated that tilting his head forward or backward is painful. He stated that he wears a soft cervical collar at all times except when driving in order to limit his range of motion and thus reduce his neck pain. [T. 57]. Plaintiff reported having four to six migraine headaches per month. [T. 58]. He further reported that his energy is very low due to depression from pain. Plaintiff stated that he no longer experiences significant side effects from hepatitis C since receiving treatment for that condition in 2008. [T. 59-60].

Plaintiff rated his pain as a seven on a ten-point scale. He stated that he uses Flexeril for pain. He reported that the medication he takes for his bipolar disorder causes tremors. [T. 65]. Numbness and weakness affect his left arm and fingers, such that he cannot write for long and requires assistance to dress himself. [T. 66].

Plaintiff testified that his mental impairments make him paranoid and angry. He reported that his moods and emotional energy vary greatly. He stated that his psychotropic medications sometimes help his symptoms. He noted that his visits to a mental health counselor recently were reduced from weekly to biweekly. [T. 64].

With respect to activities of daily living, Plaintiff reported that he sometimes makes his bed, never vacuums, and does not work outdoors. [T. 67]. He reported that he was separated from his wife and was living with his parents. [T. 61]. He does not socialize with friends. [T. 62]. Plaintiff testified that he no longer goes hunting or fishing. [T. 63]. He stated that he can sit or walk for twenty minutes before needing to switch positions. Plaintiff testified that walking makes his hip pain worse. He testified that he can lift ten pounds sometimes. He estimated that he spends 75-80% of his time in his recliner, as sleeping in a bed hurts his neck. [T. 68].

At a supplemental hearing, the ALJ obtained the testimony of two medical experts. Consultative examiner Susan Bland, M.D.[1] testified as to Plaintiff's physical impairments. After summarizing the medical evidence, Dr. Bland testified that based on Plaintiff's continuing neck problems and history of hepatitis C, she found him to be capable of performing light duty work which allowed for repetitive bending and stooping; no overhead reaching; occasional squatting, kneeling, crouching, crawling; and no climbing of ladders, working at heights or around hazardous machinery. [T. 33].

---

[1]Dr. Bland is erroneously identified in the transcript as Dr. Sigmund Bland.

Consultative examiner Thomas E. Schacht, Psy.D.[2] testified at the supplemental hearing regarding Plaintiff's mental impairments. After summarizing the records concerning Plaintiff's mental health treatment, Dr. Schacht concluded that Plaintiff had a low average IQ, and that limited indications of substance abuse appeared in the record. He described Plaintiff's mental impairments prior to November 2007 as episodic, and his 2006 hospitalization for suicidal intentions as situational. Dr. Schacht recounted medical records showing that Plaintiff had a good response to medications and was stable in his conditions, and he noted the contrast between these objective findings and the significantly more severe symptoms reported to Dr. Zeisz. [T. 38]. Dr. Schacht noted the significant inconsistency between his therapists' long record of positive treatment outcomes and the moderately negative findings in the April 2009 PRT. Dr. Schacht further noted that other providers' records noting Plaintiff's normal mental status also contradicted that PRT. [T. 40].

## V.    THE ALJ'S DECISION

On August 27, 2009, the ALJ issued a decision denying the Plaintiff's claim. [T. 13-25]. Proceeding to the sequential evaluation, the ALJ found that

---

[2]Dr. Schacht is erroneously identified as Dr. Thomas Shaw in the transcript.

the Plaintiff's date last insured was March 31, 2012 and that he had not engaged in any substantial gainful activity since May 15, 2006. [T. 15]. The ALJ then determined the following severe impairments: cervical degenerative disc disease with headaches; lumbar degenerative disc disease; history of treatment for Hepatitis C; and a mood disorder. [Id.]. He found that Plaintiff did not have a severe intellectual impairment. [T. 16]. The ALJ concluded that his impairments did not meet or equal a listing. [Id.]. He then determined that Plaintiff retained the residual functional capacity (RFC) to perform simple, repetitive light work allowing for avoiding repetitive bending and stooping, no overhead reaching, occasional squatting, kneeling and crawling; no climbing ladders; and no working around heights or around hazardous equipment or machinery. [T. 17]. He found that Plaintiff was unable to perform his past relevant work. [T. 24]. He found that Plaintiff was a younger individual with at least a high school education. [Id.]. Transferability of job skills was not material. [Id.]. At step five, the ALJ concluded that significant work existed in the national economy that Plaintiff could perform. [Id.]. Accordingly, he concluded that the Plaintiff was not disabled from May 15, 2006 through the date of his decision. [T. 25].

## VI.   DISCUSSION

On appeal, Plaintiff contends that the ALJ erred in evaluating the medical source opinions in the record and that the ALJ erred in evaluating Plaintiff's subjective complaints of pain and other symptoms.  For the reasons that follow, the Court finds and concludes that the ALJ followed applicable law and that his decision is supported by substantial evidence.

## A.   The ALJ properly evaluated the medical opinions in the record.

Plaintiff first asserts that the ALJ erred in relying "excessively" on the testimony and opinions of Dr. Bland and Dr. Schacht and in rejecting the opinions of his treating physician, Dr. Ogg, and the consultative examiner, Dr. Zeisz.  [Doc. 8 at 4-6].

A treating source's opinion regarding the nature and severity of an impairment is entitled to controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.  20 C.F.R. § 404.1527(d)(2).  "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Mastro v. Apfel, 270 F.3d 171 (4th Cir. 2001).  In deciding the weight to attribute to any

medical opinion, among the elements the ALJ may consider are the supportability of the opinion through medical signs and laboratory findings, and the consistency of the opinion with the record as a whole. See 20 C.F.R. § 404.1527.

In the present case, the ALJ determined that Dr. Ogg's opinions regarding Plaintiff's ability to perform core physical work functions were contradicted by her own clinical findings as noted in the treatment records and by the overall longitudinal record. [T. 20, 21]. There is substantial evidence to support the ALJ's findings in this regard. Dr. Ogg's medical records show that Plaintiff was repeatedly found to be in no acute distress and that his neck pain was well-controlled with medication. [T. 296-316, 336-62, 434-44, 522-30, 587-601, 651-63]. Similarly, examinations by Dr. Fowler found that symptomatically Plaintiff appeared to be doing well, and that he had full power in his upper and lower extremities bilaterally, his upper extremity sensation was intact, he had no neurological deficits, and his cervical x-rays revealed a complete fusion. [T. 263, 264]. Dr. Rehfield found that Plaintiff had no swelling or tenderness in his upper or lower extremities, there was no atrophy, tenderness, or swelling in his hands, his grip strength was rated as five out of five bilaterally, he was able to pick up small objects with either hand without

difficulty, and there was no evidence of paravertebral spasms in his cervical or lumbar spine. [T. 399-400]. As Dr. Ogg's opinions are not consistent with either her treatment notes or the other evidence in the record, the ALJ's determination that her conclusions were not entitled to any substantial weight was well founded.

Plaintiff also challenges the ALJ's decision not to adopt Dr. Zeisz's opinion. The ALJ rejected that opinion on the grounds that it was based on a one-time examination, relied on the history and report supplied by Plaintiff, and was not consistent with the treatment record. [T. 22]. There is substantial evidence to support the ALJ's decision. In determining the weight to which an examining physician's opinion is entitled, the ALJ must consider the length of the treatment relationship, the frequency of the examination, and the nature and extent of the treatment relationship. 20 C.F.R. § 404.1527(d)(2). Here, Dr. Zeisz examined Plaintiff on only one occasion, and the ALJ properly took this fact into account in weighing Dr. Zeisz's opinions.

Moreover, the Fourth Circuit has held that an ALJ can give little weight to a doctor's opinion that is based mainly on a claimant's subjective complaints. Mastro, 270 F.3d at 178. This is precisely what the ALJ did in

this matter with regard to Dr. Zeisz's opinion, and therefore he committed no error in determining that her opinion should be given little weight.

Further, Dr. Zeisz's opinion was not supported by her own objective findings or the other evidence in the record. In her report, Dr. Zeisz observed that Plaintiff was socially appropriate, his insight and spontaneity were adequate, his thought form was logical, he denied suicidal ideation, there was no evidence of a formal thought disorder, and there was nothing unusual about his thought content. [T. 393]. Dr. Zeisz also found that Plaintiff's speech was normal, he was not hyperactive, he was oriented to three spheres, he could recall four out of five objects immediately, his remote memory was grossly intact, he could perform simple calculations in his head, his intellectual functioning was in the broad average range, his insight and ability to process information were adequate, and his concentration and attention were generally intact. [T. 393-94]. These findings are inconsistent with the marked limitations Dr. Zeisz stated in his opinion. The ALJ therefore did not err in rejecting that opinion.

By contrast, there is substantial evidence to support the attribution of great weight to the opinions of Dr. Bland and Dr. Schacht. Both of these experts thoroughly discussed their review of the medical evidence, and they

based their opinions on the objective findings contained therein. Because their conclusions are consistent with the longitudinal record, the ALJ did not err in attributing great weight to their opinions. This assignment of error is overruled.

**B.    The ALJ properly evaluated Plaintiff's subjective complaints.**

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir.1996) (citing 20 C.F.R. § 416.929(b); § 404.1529(b); 42 U.S.C. § 423(d)(5)(A)). If there is such evidence, then the ALJ must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Id. at 595 (citing 20 C.F.R. § 416.929(c)(1) and § 404.1529(c)(1)).

Having found that Plaintiff had severe conditions that reasonably could be expected to cause pain, the ALJ evaluated Plaintiff's subjective complaints of pain, ultimately concluding that they were not fully credible. There is substantial evidence to support this finding. As the ALJ correctly noted,

Plaintiff's hepatitis C was treated successfully, and he received no more than conservative treatment for his alleged back pain. [T. 23]. Further, while Plaintiff had continued complaints of neck pain with headaches, he received only conservative treatment following his July 2006 surgery, and he did not exhibit any evidence of radiculopathy following the procedure. With respect to his alleged mental impairments, the record indicates that Plaintiff responded well to treatment, and that his use of medication was effective in treating his symptoms. Further, the ALJ properly noted that Plaintiff's credibility was diminished due to possible drug use, as Plaintiff tested positive for marijuana use in August 2006. [T. 23]. Further diminishing Plaintiff's credibility are indications in the mental health records that Plaintiff expressed an interest in returning work and that his therapist felt he was emotionally capable of working. Finally, while Plaintiff alleged that daily activities were limited, the ALJ noted that Plaintiff walked, watched television and movies, prepared simple meals, dusted, and did some household chores. [Id.].

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The record amply supports the ALJ's credibility

findings. Given the deference due to the ALJ's credibility determination, the Court finds that the ALJ's analysis of Plaintiff's pain followed applicable law and is supported by substantial evidence. This assignment of error is, therefore, overruled.

## VII. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding of no disability through the date of his decision.

### O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 9] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc.7] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: December 1, 2011

Martin Reidinger
United States District Judge

21